IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


```
-----------------------------
                            :
UNITED STATES OF AMERICA    :
                            :
            Plaintiff       :
                            :
       v.                   : 3:01-cr-00519-JAG-2
                            :
DAVID RENATO NUNEZ-PEREZ(2) :
                            :
            Defendant       :
                            :
-----------------------------
```

STATUS CONFERENCE
VIA VTC


Was held Before HONORABLE U.S. DISTRICT JUDGE JAY A. GARCIA-

GREGORY, sitting in San Juan, Puerto Rico, on August 16,

2024 at 3:50 p.m.

2

1   APPEARANCES:

2

3   FOR THE GOVERNMENT:

4   LUIS VALENTIN, AUSA

5

6   FOR THE DEFENDANT:

7   KEVIN LERMAN, AFPD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        THE CLERK: Criminal Case 01-549, United States of

2  America versus David Renato Nunez Perez for Status

3  Conference.  On behalf of the government is AUSA Luis Angel

4  Valentin.  On behalf of the defendant is AFPD Kevin Lerman

5  and also connected via VTC is USPO Ricardo Carrillo.

6        THE COURT: Okay and so already made their

7  appearances and you have it on the record.  Okay, so let's

8  start with the Public Defender.  I'd like to know exactly

9  what is it that you're arguing here.  I understand that

10  there's an issue concerning whether supervised release has

11  expired or not or is that a non issue?

12        MR. LERMAN: Good afternoon, Judge Garcia.  I'm

13  Kevin Lerman on behalf of Mr. Nunez.  Can you hear me okay?

14        THE COURT: I can hear you well.

15        MR. LERMAN: We're arguing there's been a

16  preliminary hearing in this case and there was a joint

17  motion that Mr. Nunez remain in the community under

18  supervision.  The question about whether he's subject to any

19  expired term of supervised release arose because when he was

20  released last July, July of 2023, he was released under

21  Federal Rule of Appellate Procedure, Rule 23© in case number

22  19-CV-1555 and so he's on bail pending the Respondent's

23  appeal.  So that case is a habeas case under 22 --

24        THE COURT: You're frozen.  I don't know what we

25  can do about this.

1    MR. LERMAN: So, our understanding until the case

2    was brought and we believe that was the understanding that

3    Probation had as well.  So, until Probation moves to notice

4    alleged violations of supervised release in this case and it

5    went before the Magistrate, it looked like it was still in

6    Rule of Public Procedure 23© proceedings but then what

7    happened was Magistrate Judge McGiverin ordered Probation to

8    file the same motion that's been filed in the civil case in

9    the case before Your Honor and that's when the question

10   arose whether Mr. Nunez is subject to any unexpired term of

11   supervised release and I ask that question because he was

12   released from federal custody on June 20th of 2010 to serve

13   a five year term of supervised release but he was

14   transferred into the Department of Corrections and

15   Rehabilitation of Puerto Rico and at that time he was

16   subject to judgements that turned out according to the order

17   issued by Judge Young to have violated the double jeopardy

18   clause of the Constitution.

19       So, he was essentially released from federal custody to

20   begin that term and our hypothesis and we just spoke last

21   week with the prosecutor in the case and we understand this

22   case is new for him and there's a lot of complexities to it

23   and so we owe the prosecutor a memorandum to discuss that

24   view of the case and so we added that as one of the reasons

25   for staying the request to stay execution of the warrant

1   before Your Honor, which is really the last of the

2   considerations because even if the case is before Your Honor

3   as an unexpired supervision term, even though --

4           THE CLERK: AFPD Lerman, you froze.  Can you repeat

5   that please?

6           MR. LERMAN: Sure.  So, the last argument in the

7   motion to stay the execution of the warrant was included

8   because out of caution because if there is not a term that's

9   before the Court, then the Court wouldn't have jurisdiction

10  to order Mr. Nunez' arrest.

11      That doesn't mean that he's unsupervised out in the

12  world and that he's, you know, at a, you know, a grave risk

13  of, you know, going off the rails.  He is supervised by his

14  health professionals and he's under Rule 23 release.

15          So, Respondents -- so, initially as he was released

16  last July in the civil case, Respondents could move to

17  revisit Judge Young's order of release because and I think

18  that part of the confusion arose in this case as to what

19  term Mr. Nunez was subject to was when Judge Young ordered

20  Mr. Nunez released after granting the writ of habeas corpus.

21      He indicated that he'd be subject to the conditions

22  that were imposed in this case and he placed him in the

23  custody --

24          THE COURT: He froze.

25          THE CLERK: AFPD LERMAN, can you hear me?

1            MR. LERMAN: Yes.

2            THE CLERK: Your camera froze again and we couldn't

3    hear you.

4            MR. LERMAN: Okay and I'm sorry about that.  Is

5    there a way that I could -- I'm on our main connection

6    through the office, so I'm not on wifi or anything.  Is

7    there -- oh, actually you know I think I am on wifi.

8        Let me see if I can improve my connection.  My

9    apologies.  I'm trying to reset my connection here.  My

10   apologies.  I attempted to reconnect my internet to a more

11   secure connection.

12           THE CLERK: AFPD, we can hear you clearly.

13           MR. LERMAN: Okay.  My apologies, Your Honor.

14           THE COURT: No, that's okay.

15           MR. LERMAN:  I think that where I left off I was

16   explaining the position with respect to where we stood on

17   where the confusion might have arose when Mr. Nunez was

18   released in the State habeas case and he was released under

19   the conditions that this Court imposed for supervised

20   release.

21       We understood that was just kind of a baseline that the

22   Court was using as a reference point there and if there were

23   to be a violation then the Respondents in that case that

24   warranted a reconsideration of the release order, then the

25   Respondents in that case would be free to move at any time

1   to revoke Judge Young's order releasing Mr. Nunez and so far

2   they haven't made that motion and so instead, the Magistrate

3   ordered Probation to re-file the same motion.

4        So, we've been addressing different needs that have

5   arisen over the last year since Mr. Nunez was released after

6   serving roughly a quarter of a century in State prison in

7   extremely dismal conditions where he contracted liver

8   disease, where he had untreated substance use disorder.

9        So, when he was released, he proactively, without an

10  order from anyone, without an order from the Court or from

11  Probation, and proactively sought treatment through APS,

12  through APS in Manati where he's still a patient.  He was

13  there receiving treatment today.

14       He's got an appointment again for next week and he's

15  also receiving treatment through an out-patient provider

16  that's contracted through Probation.

17       So, today we're raising the legal argument as a

18  consideration and as something to keep in mind but our main

19  argument to stay the execution of the warrant is based on

20  Mr. Nunez's demonstrated commitment to his treatment, his

21  very consistent communication with Probation, with his

22  counsel and with his treatment providers.  So --

23            THE COURT: Here we go again.

24            THE CLERK: AFPD Lerner --

25            THE COURT: Okay, now okay.  You were arguing that

8

1    he was complying with all the conditions, you know, having

2    communication with his Probation but how do you account for

3    these two positive tests to something that is really

4    serious, which is cocaine and fentanyl?

5            MR. LERNER: Yes, Your Honor, and we --

6            THE COURT: Those are dangerous drugs.

7            MR. LERNER: We didn't attempt to -- we haven't

8    attempted to sugar coat any of his issues in our motions or

9    before the Magistrate at any point.  The allegation is that

10   he gave positive test results on July 31st and on August

11   6th.

12        Today is August 16th.  We cite many provisions from the

13   Guide To Judicial Counsel policy in terms of reacting to

14   such issues, so and we cite a number of non-compliant

15   behaviors which are often seen in somebody with substance

16   use disorder and so what we have is somebody who's imperfect

17   but somebody who is committed to treatment and I think that

18   the record shows his commitment and it shows improvement and

19   so, he's successfully completed two in-patient programs.

20     He's successfully completed an intensive out-patient

21   program and so what the U.S. Courts guidance provides is

22   that one of the steps along the way unfortunately to --

23            THE COURT: This froze.

24            MR. LERMAN: Is someone that's struggling and we

25   see someone whom the Court can summons for a hearing and

1    we'd like the opportunity at least to come with Mr. Nunez to

2    present in front of Your Honor, to discuss what the on-going

3    treatment plans are and the on-going actions.

4        Most importantly, I think is that we don't see someone

5    engaging out in the streets in risky behavior.  It's like,

6    for example, alcoholism.  You can have someone who suffers

7    from alcohol addiction but is not out in the world fighting

8    with people or, you know, engaging in risky behavior, you

9    know, driving, you know engaging with heavy machinery.

10   That's not the situation that we have here.  We have a

11   medical situation that's being treated by medical

12   professionals --

13           THE COURT: Yes, but the problem is that, you know,

14   this was tested and it was sent to a lab, you know, for

15   testing and the objective results show that he actually

16   ingested fentanyl and cocaine.  At least that's what

17   Probation says.

18       Now, that doesn't square, you know, with his liver

19   disease.  I'm sure that if anything, it aggravates that

20   disease.  You see --

21           MR. LERMAN: No, Your Honor.

22           THE COURT: It protects him also from himself,

23   okay.

24           MR. LERMAN: Your Honor, we agree one hundred

25   percent and that's why we believe it's so important to

1    continue treatment with his medical professionals.

2          THE COURT: I know but how do I know that he's not

3    going to be ingesting, you know, even if I decide, you know,

4    that we'll have the preliminary revocation hearing next

5    Friday and this week he's going to be in treatment as you

6    say in Arecibo, whatever?

7       How do I know that he's not going to be ingesting more

8    fentanyl and cocaine and he's going to be here next Friday?

9          MR. LERMAN: Your Honor, I think that what the

10   Court has to look to is whether there is a specific basis to

11   determine that something materially changed since we were

12   last before the Court and the Court last determined that

13   it's worth --

14        THE COURT: Oh, here we go.  I think we have a poor

15   connection.

16        THE CLERK: Your Honor, it's his connection.

17        THE COURT: Oh, his connection, okay.  Okay, now

18   you're back.

19        MR. LERMAN: I'm so sorry about this.

20        THE COURT: My question is, don't you think that,

21   you know, testing positive twice for fentanyl and cocaine is

22   something that actually changes the whole picture?

23      I mean, I have to give Probation a presumption, you

24   know, that that is correct even though he denies it, you

25   know, but we have two labs that already certified those

1    results.

2              MR. LERMAN: Your Honor, I just have two things to

3    respond to that and again, in one of the conversations that

4    we had with the Probation Officer, he indicated that he's

5    between a rock and a hard place and we agree with that and

6    we have tremendous admiration --

7              THE CLERK: Ah --

8              THE COURT: Here we go.  Now, you're out.  What

9    happened here?

10             MR. LERMAN: I don't know.

11             THE COURT: My end is coming in.  No, okay.  Okay,

12   I'll listen to you now.

13             MR. LERMAN: So, Your Honor, we have tremendous

14   admiration and respect for the work that Probation has done

15   and we believe they've gone above and beyond to work

16   collaboratively with Mr. Nunez, which is indicated in one of

17   their motions and so, I think that there is enough, enough

18   there to believe and to hope and have faith that Mr. Nunez

19   has really, you know, seen the light in this struggle.

20        We've seen him come to grips.  You know, he had a lot

21   of difficulty and a lot of shame admitting the struggles

22   that he was going through last fall, through the winter,

23   through the spring and, you know --

24             THE COURT: Why is Liliana -- Liliana shouldn't be

25   in now.  She's blocking the, you know, yeah.

1          MR. LERMAN: I think that other screen –

2          THE COURT: Yeah, Liliana try not to -- you know,

3     she's setting up probably the equipment there.  Okay, but

4     the thing is that shame is not going to help him become

5     better with respect to health.  Okay.

6      If he has a liver disease and he is ingesting these two

7     drugs, I'm sure that his doctor would agree with me that

8     that is counter productive and self destructive.

9          MR. LERNER: We agree with you, Your Honor, and

10    that's why we think, we would like Your Honor, to have an

11    opportunity to meet with Mr. Nunez face to face and we'd

12    like him to have the same thing because, you know, I can

13    represent as an officer of the Court, that I spoke with Mr.

14    Nunez today.  He was asking for an adjustment to his

15    medication assisted treatment.

16     He was at APS in Manati.  He has a follow up visit next

17    week.  You know, this was one of the things that some people

18    are resistant to when they're dealing with Opioid use

19    disorder, is taking medication because they believe they're

20    replacing, you know, one "vicio" with another and so he has

21    overcome that barrier and so it would be, now that he's

22    taking that medication and now that he's working full time,

23    you know, he's not going to be able to fake it.

24     If he continues to use, the Court will know, Probation

25    will know and he'll be out of options.  The only option that

1    hasn't been tried in this case is a long term in-patient

2    program and there's been some practical reasons that some of

3    his providers and some of those who are in positions of

4    guidance for him and Probation and those who know him,

5    haven't been, you know, eager to rush him into because of

6    his supportive, you know, equities in the community.

7         You know, he's been able to work full time, so a lot of

8    this is returning to society after, you know, going

9    untreated for a very long period of time in prison.

10        So, it's a very rare situation where someone is so

11   committed to treatment and yet struggling but making

12   progress.

13        So, we're not saying that just shame is what the Court

14   should rule on but with the various, you know, piece of

15   information in the record and from our representations and

16   the representations in the motion, you know, we hope that

17   Your Honor, you know, will consider at least just allowing

18   Mr. Nunez to come to a hearing on his own accord and he's

19   demonstrated that he's responsible to do that.

20        Last time that we had a hearing in Old San Juan, you

21   know, we met with him outside of the courthouse.  We went to

22   the hearing.  He went through security with the U.S.

23   Marshals.  We think that that's really important.

24        He was just released from serving an illegal State

25   sentence and so that trauma of being placed back into U.S.

1   Marshal's custody just to come to a preliminary hearing, we

2   think it's warranted, at least, and the hearing could be

3   next Monday, if Your Honor, wishes just and if there's a

4   determination then that's adverse, you know, we've discussed

5   all options with Mr. Nunez.

6       He's aware of the exposure that he has if this term,

7   you know, is still not expired and there's a basis to be

8   revoked here, you know, we've discussed these options with

9   him.

10      He's informed.  He's committed to his recovery and so

11  really the application now is just so that he can present

12  himself personally in court.

13          THE COURT: Okay.  Then when you say about a

14  preliminary hearing, are you talking about me or the

15  Magistrate Judge?

16          MR. LERMAN: Your Honor, the rules provide for it

17  with the Magistrate.  If Your Honor wished to treat this

18  matter as, you know, a drug court matter, you know, one of

19  the things that we cite from the Judiciary Guide is that

20  there's two parts of the framework in substance use

21  treatment cases.

22      There is sort of the behavior control model which is

23  through, you know, adverse consequences, the removal of

24  privileges, that sort of thing and there is this sort of

25  more motivational model which we think Probation has

1    deployed both very well but to this point, we haven't had an

2    adversarial position with Probation whatsoever.

3         We don't think that it'd be positive to do cross

4    examination, to do discovery and to call his specialist into

5    Court but if that will aid the Court's decision, then we

6    would call as witnesses the doctors who have gotten to know

7    him over the last year.

8         The specialist, you know, we believe that Officer

9    Carrillo has a wealth of mitigating information that he

10    could testify to.

11         So, but if the Court wishes to treat this case as sort

12    of a drug court case in order to continue using the

13    specialists that are most important to Mr. Nunez'

14    recovery, then we would propose that for the Court and that

15    the Court have a hearing and especially for continuity given

16    the complexity of his treatment issues and his health

17    issues, then we would propose that and frankly I wouldn't

18    propose that for everyone but with the responsibility that

19    Mr. Nunez has demonstrated with making it to appointments,

20    with prioritizing his issues, even if he's struggled at

21    times over the last year.

22         THE COURT: I get it.  I understand.  I'd like to

23    hear Probation's position now.

24         MR. CARRILLO: Good afternoon, Your Honor, and God

25    bless you.  Officer Carrillo from the United States

1    Probation Office, for the record.  I am the Probation

2    Officer that is supervising Mr. Nunez Perez.  As always, we

3    always defer to the decision of the Court.

4        We were following the orders of Judge McGiverin to file

5    the motions in this case.  Our only concern with Mr. Nunez

6    Perez is the danger he poses to himself due to his continued

7    use of controlled substances, specifically cocaine and

8    fentanyl.

9        With the last two reported positives, the count rises

10   to around twenty to twenty one positives since being

11   released to the community on July 2023.

12       We, as Counselor Lerman has, AFPD Lerman has stated, he

13   has submitted himself to in-patient treatment with us at

14   Hogar Santisima Trinidad.  He also has submitted to two

15   detoxes, one at Hospital San Juan Capestrano and one at

16   Hogar Compromiso de Vida.

17       He has successfully completed all three.  That is

18   correct.  That is true.  He's also successfully completed

19   intensive out-patient treatment at Clinica Medica

20   Psychoterapeutica del Noroeste en Arecibo which is sub-

21   contracted by our office and also is currently receiving

22   mental health treatment at APS Clinics while

23   conjunctively receiving substance abuse treatment still at

24   Clinica Medica Psychoterapeutica del Noroeste.

25       Still, the positives are still there and he still

1  continues to test positive to cocaine and fentanyl, a

2  combination which is colloquially termed as speed ball and

3  that is highly concerning to us since he continues to test

4  positive and we feel that he might be a danger to himself

5  due to all his health risks and also to the community.

6      God forbid under the influences he engages in activity

7  that could be detrimental to the community.  Aside from

8  that, he's not a danger, a flight risk.  We all agree on

9  that but still his problematic use of substances is

10 concerning to the Probation Office and that's why we have

11 filed the motion, Your Honor.

12     THE COURT: Okay, so you believe that, you know the

13 only way that he will abstain from ingesting this highly,

14 you know, dangerous substances is by confining him to

15 prison?

16     MR. CARRILLO: Again, we recommended that because

17 we have exhausted all our resources in this case unless Your

18 Honor decides otherwise.  If Your Honor orders him to submit

19 to a longer term in-patient treatment as AFPD Lerman

20 suggests or recommends, again we abide by your orders, Your

21 Honor, as always.

22     THE COURT: Well, the problem is that if he tests

23 positive once more, that would be three and you know what

24 happens when that he tests positive --

25     MR. CARRILLO: Yes and we -- I harken back to what

1    Judge McGiverin told him, told Mr. Nunez at the preliminary

2    hearing held at that same courtroom in which Judge McGiverin

3    stated to Mr. Nunez that if he does not take his health

4    seriously, why would he expect the Court to do the same.

5        We harken back to that and obviously I spoke to Mr.

6    Nunez Perez afterwards in the presence of AFPD Lerman and

7    AFPD Franco Perez.

8        So, again, our recommendation is an arrest warrant but

9    again, as always, we defer to the Court in the decision and

10    will abide by your orders and execute them forthwith, Your

11    Honor.

12        THE COURT: Okay, so you know what we have is two

13    options.  That would be, you know, for me to implement the

14    warrant of arrest or you know, order him for an in-patient

15    long term treatment, is that it?

16        MR. CARRILLO: That's your decision, Your Honor.

17    Again, you know our position.  We'll always defer to you and

18    we'll execute your order.

19        THE COURT: Okay, well let's do something.  I have

20    to hear the government.  Let me hear the position of the

21    government and I'll make a decision.  Okay.

22        MR. VALENTIN: Thank you, Your Honor.  Your Honor,

23    in a nutshell, it seems to the government, after conferring

24    on this matter extensively with the Probation Office, that

25    it has most respectfully over extended the resources, the

1  courtesy and the supervision for what on its face appears to

2  be a very, very serious substance abuse problem by this

3  defendant and with all recognition of any improvements that

4  he has made, just in the last sixty days he has shown that

5  he cannot be trusted.

6      He entered this program.  He appeared to be committed

7  to the program and immediately upon being released, went

8  back to the same conduct.  It is not only dangerous to

9  himself but dangerous to others who may very well be in the

10  immediate area where the defendant is ingesting or consuming

11  cocaine and fentanyl.

12      That's such a deadly combination, can cause serious

13  impact upon others.  Well, let me also focus our attention

14  on the defendant.

15      He is under bail conditions, regardless of his

16  appellate avenues and those bail conditions come with

17  restrictions.  They're not to be disposed of or disregarded

18  by the defendant and I don't take saying this lightly

19  because I do believe that every defendant has an opportunity

20  at redemption and those who have a substance abuse problem

21  should clearly be given an opportunity for that treatment

22  but when I look at the remarkable history in this case, in

23  one short year there have been an excess of twenty positive

24  results.

25      There have been at least a combination of serious detox

1    programs, intensive out-patient and mental health

2    treatments.  We are at a point where this defendant is

3    naturally committed to the care and the treatment that he so

4    desperately needs and I marvel most respectfully at any

5    request that suggests he should be allowed to roam around in

6    our community to continue to engage in drug use.

7         It is very, very troubling, concerning and dangerous

8    and most respectfully, the government has no other recourse

9    than to respectfully request that Your Honor impose the

10   arrest warrant; that he be taken immediately into custody.

11   If he's not in Mr. Lerman's office, that he surrender

12   himself to the nearest law enforcement agency and that this

13   matter be scheduled as it was previously on September 10.

14        THE COURT: September 10, I'm not going to be here,

15   so it's no September 10th but I was thinking of is having

16   this next Friday, the 23rd at 4:00 p.m.

17        MR. VALENTIN: Well, Your Honor, I will certainly

18   abide by your request.  I'm not going to be in the

19   jurisdiction the afternoon of the 23rd.  I will be traveling

20   out of the jurisdiction.

21        I can certainly have one of my colleagues fill in but

22   to the government's point, the essential point being that

23   Your Honor imposed an arrest warrant and that arrest warrant

24   was based in large part by the certification of this

25   dedicated United States Probation Officer and also the

1    questionnaire guidance that was given to this defendant by

2    the Honorable Magistrate Judge McGiverin and I recall those

3    words and they were a fair warning, "take care of the

4    priority and in a short month he has not done that and this

5    defendant really needs to be held accountable for that

6    dereliction of his responsibility, not counsel, not the

7    Probation Officer, not I, but he has to be held accountable

8    and I would hate to balance the security and safety of the

9    community, including the defendant's own safety at the

10   expense of giving him a free weekend pass.

11        It's just not appropriate under the totality of this

12   case and the unfortunate continuous pattern of malfeasance

13   on the defendant.

14        When bail conditions are given to a defendant, it is a

15   commitment, a trust that is placed upon him and the Court

16   and Probation and the parties.  He has not lived up to that

17   and here's the other thing that concerns the government.

18        When questioned about this, there is a denial of the

19   use which then prompts Probation to use additional resources

20   to confirm that which is apparent to the entire world, that

21   this man is using dangerous drugs, a speed ball on repeated

22   occasions.

23        So, not only is he acquiring this illegal substance,

24   he's making affirmative efforts to acquire it illegally

25   because no one is prescribing this to him and then he's

1   doing it in a way to inject it upon himself or ingest it in

2   a manner that not only exposes him but others close by to

3   serious peril.

4        So, again the United States respectfully requests that

5   the arrest warrant be executed and that the matter be set

6   accordingly.  Thank you.

7             THE COURT: Okay.

8             MR. LERMAN: May we respond to that, Your Honor?

9             THE COURT: Public Defender wants to reply.

10            MR. LERMAN: Yes, Your Honor.  We'd just like to

11  just briefly respond to both the Probation and the

12  government and I think that it's a little confusing because

13  I know that the motion we filed is a little bit out of order

14  but these arguments that Your Honor is hearing are the type

15  of arguments that should be heard at a hearing with Mr.

16  Nunez and so, the authorization of a warrant is not to

17  authorize imprisonment, that's just to authorize that he be

18  brought to the Court for a hearing and if the Court just

19  issues a warrant, then this whole case goes before a whole

20  new set of people, whoever happens to be on duty and so, the

21  arguments that Your Honor has heard from the government and

22  from Probation, should be heard in person with Mr. Nunez

23  present and what Your Honor hasn't heard from the government

24  especially is a response to our motion filed at 201 and a

25  response that fits within the framework of the Guide to

1    Judiciary Policy because the government is alleging that

2    what should happen is just an arrest and an imprisonment and

3    that's the end of the thing.

4        But that's not what the U.S. Courts Guidance calls for

5    and there's a strong focus on harm reduction, especially for

6    someone who continues to be a willing patient to avail

7    himself of his provider and as the policy guidance provides,

8    the behavioral change process is full of trial and error.

9        That's 650.30.50C1 and that relapse is one of the

10   stages of a predictable process while someone suffering from

11   substance use continues to struggle to achieve stability and

12   that's in Section 620A.

13       So, all of these arguments should be heard before Your

14   Honor and if Your Honor has any concerns based on what Your

15   Honor has heard and what Your Honor hasn't heard from either

16   of the two speakers on behalf of Probation and on behalf of

17   the government is any allegation that Mr. Nunez engages in

18   risky behavior and the analogy that I was trying to make

19   earlier when I got disconnected from the video conference,

20   was there are people who have alcohol problems who never

21   drive drunk and when someone drives drunk, that's when they

22   need to be taken away from the wheel and they also need

23   alcohol abuse treatment.

24       Now, this isn't a situation where there's an allegation

25   that Mr. Nunez is engaging in any risky conduct but the

1    Court could impose a curfew ahead of the next hearing.

2        Our application is all just ahead of the next hearing

3    before Your Honor or before the Magistrate because the next

4    step in following what –– which by the way, which is an

5    unsworn supplemental motion from the government and hasn't

6    been and isn't guaranteed under Rule 11.

7        The next step is a preliminary hearing on that if the

8    Court authorized the warrant.  So, the Court can hold a

9    hearing and Mr. Nunez can travel from his home which is over

10   an hour away from the Court and come to Court with everyone

11   who knows this case well, when everyone is available, when

12   Your Honor is available.

13       If Your Honor delegates the hearing to Judge McGiverin,

14   then continuity can focus on the part of the issue which is

15   how to continue treatment for Mr. Nunez while considering

16   all of the other considerations of public safety and health

17   and fairness and justice which is where we started, which is

18   whether there's jurisdiction as it is and so we can ––

19           THE COURT: Well, this is what I'm going to

20   do, you know, since you know, I think one week is not going

21   to do too much harm, okay.  I'm going to hold the revocation

22   hearing, the final revocation hearing next Friday, okay,

23   next Friday, the 23rd at 4:00 p.m. and meanwhile, you know,

24   I will continue to have this warrant of arrest stayed.

25       However, I trust Counsel that his client is going to be

1  here or would you like for me to issue a summons?

2          MR. LERMAN: Your Honor, we don't believe there's a

3  need for a summons.  We'll inform him of the hearing.  We'll

4  meet with him ahead of the hearing and we'll arrive to the

5  Court together.

6          THE COURT: Okay, because if he's not here by

7  4:00 p.m. next Friday, the warrant of arrest will be

8  reactivated immediately.  Okay, but I would like to hear

9  you.  I would like to hear his version.  I would like to

10  hear Probation who's going to be here also, you know, for

11  that hearing and then the government can send someone and

12  brief him, you know, concerning this case.

13      So and I am setting it at 4:00 because I believe I have

14  two revocations before that, that's why.  Okay.  So far

15  they're there, you know, and I would set it before but it

16  has to be at that time.  Okay.

17          MR. VALENTIN: Your Honor, may I?

18          THE COURT: Yes.

19          MR. VALENTIN: May we add one item?  The government

20  is aware of the Court's ruling as just pronounced.  I would

21  respectfully request that Your Honor add as a component to

22  that order, since he has been given a benefit of surrender,

23  that he report immediately to the United States Probation

24  Officer, provide a sample and also be adjusted for an

25  electronic monitoring device.

1    This way we can adequately protect and safeguard the

2    legitimate concerns that have been raised.  Given the

3    defendant who is clearly addicted to significant drugs, one

4    week of unsupervised conduct or time period is at the least,

5    incredibly dangerous.

6    So, he should, as counsel pointed he has access to him.

7    He should present himself forthwith today to the Probation

8    Office for the installation of an electronic monitoring

9    device and any other conditions as they deem appropriate to

10   appropriately monitor him.

11             THE COURT: Public Defender.

12             MR. LERMAN: Your Honor, I don't think that the

13   Court has heard a basis for that request and, you know, we,

14   after we filed this motion, we reached out to the

15   government.

16   We asked them to contact us if there were any specific

17   concerns that they had and we think, and we also think, Your

18   Honor, it's not an accurate statement of facts to say that

19   Mr. Nunez is out in the world unsupervised.

20   He works at Experts which has very close and Officer

21   Carrillo I think can correct me if I'm mis-speaking, that he

22   will work full time as usual.  He goes to his programs.  He

23   lives at his family home.

24   If the Court wished for some sort of consideration like

25   that, it could increase the telephone reporting.

1      We think this is an unnecessary burden to install ankle

2    monitoring.  It's an unnecessary cost for Probation.  If he

3    were to demand that, you know a very low income gentleman

4    leave his house from the north of Puerto Rico where actually

5    we understand Officer Carrillo is at right now and rush to

6    San Juan to install something electronic.

7      I don't think it has a connection to the issues here

8    and especially given as we covered just the expensive

9    engagement with resources.  So, we would oppose, we would

10    respectfully oppose that request.

11          THE COURT: Okay.  Can he report to Probation on

12    Monday --

13          MR. VALENTIN: It belies common sense to suggest,

14    "let's set aside an arrest warrant."  When Counsel has

15    talked about the significant drug abuse history that his

16    client has, the major concerns raised by Probation and the

17    legitimate concerns raised by the government, this is a pro

18    forma request and the notion that the government has to

19    respond to a late filing by counsel and not submit to the

20    Court for its careful consideration, a basic request to

21    ensure the defendant's safety and the community at large is

22    something in my short time here in the district that I've

23    never heard an attorney say.

24      Having said that, this is a very serious situation

25    involving this defendant's blatant and continued use of

1    drugs in a flagrant manner inconsistent with the Court's

2    order.

3         Your Honor has been over extended and gracious to allow

4    him to surrender on Friday.  At the minimum, he should be

5    not inconvenienced because of his economic status but he

6    could be for electronic monitoring which is something that

7    the Court ordinarily would impose in such a situation and by

8    the way, it's not even inconsistent with Judge McGiverin

9    forewarned the defendant.

10        So, it almost seems like the defendant is continuing to

11   get benefit after benefit after benefit, after twenty,

12   twenty positive urines.  It is just something that is

13   unconscionable and at the stake of hyperbole, this man is

14   destined to kill himself or someone else.

15        The analogy of alcoholism is quite different.  A mere

16   sample of fentanyl can cause the death of an officer who is

17   inspecting that sample, who is near that sample.

18        So, the example is far removed from the reality of this

19   situation.  If Counsel has the contact which he has with his

20   client, his client should be on this phone line imploring

21   the Court not to execute that arrest warrant, begging in

22   essence for his continued release.

23        This condition of electronic monitoring pales in

24   comparison to the alternate, which is immediate confinement

25   at the MDC BOP.  Thank you.

1    THE COURT: That is reasonable.  So, I'm going to

2   order the electronic monitoring of defendant.  He's to

3   appear before this Court next Friday at 4:00 p.m. and he's

4   also to appear before the Probation Officer for a sample of

5   substance abuse either Monday or Tuesday or when you can,

6   the Probation can coordinate with him.

7    Okay and then I would like to have full briefing, you

8   know, both by the government and I don't know if Probation

9   has any stance on this, concerning that argument that the

10  Public Defender is making concerning the Court's

11  jurisdiction and I would like to have all those writings by

12  at least the close of business on Wednesday.

13    MR. LERMAN: Understood, Your Honor.

14    MR. VALENTIN: Imposition of the electronic

15  monitoring will also occur on Monday with the surrender of

16  the urine sample.  Is that correct?

17    THE COURT: Yes, I would prefer to have it Monday,

18  okay, and counsel for the Public Defender shall see to it

19  that his client complies with the Court order.

20    MR. LERMAN: Understood, Your Honor.

21    THE COURT: Very well.  Okay, we will resume, you

22  know, for the final revocation hearing if revocation is

23  justified, you know, next Friday.

24    I also would like to have the Federal Public Defender

25  and your colleague there at the office of the government,

1  you know, prepared to tackle the issues of jurisdiction, if

2  there's any jurisdiction issue of this case because I really

3  don't -- you know, I want to make sure that we do.

4      Okay, meanwhile, you know everything is, you know, the

5  arrest warrant will be stayed but pending, you know, these

6  remedial measures in order to make sure that he complies,

7  you know, with bail conditions set by Magistrate McGiverin.

8  Okay.

9          MR. VALENTIN: Very well.

10         MR. LERMAN: Your Honor, would it be possible also

11 that the just to -- we just want to give notice to the

12 government that we're going to seek disclosure.

13         THE COURT: I can't hear you.  I can't hear you.

14 Okay.

15         MR. LERMAN: Yes, Your Honor.  So, just giving

16 notice that we're going to seek disclosure by the government

17 of any material supporting its theory whether any social

18 scientists back the proffered statements by the government

19 today.

20         THE COURT: Well, if the government has any such

21 evidence.

22         MR. VALENTIN: I think it is common sense and

23 judicial notice could be taken but we'll reply to the

24 Court's directive and to your memo.

25         THE COURT: Okay, I want everything filed by

1    Wednesday at the close of business, okay.  So I can make a

2    proper decision.

3              MR. LERMAN: Thank you.

4              THE COURT: Very well.  Thank you for appearing in

5    such short notice.

6              MR. CARRILLO: Your Honor, one more question, if I

7    may.

8              THE COURT: Yes, Probation.

9              MR. CARRILLO: If I may, Your Honor.  Can you hear

10   me?

11             THE COURT: Yes, I can hear you.

12             MR. CARRILLO: Do Your Honor still needs the

13   Probation Office's response to the motion filed by AFPD

14   Lerman today by the end of business day?

15             THE COURT: Well, if you think that it would

16   enlighten the Court, you know, to make a proper decision, I

17   would very much like your input.

18             MR. CARRILLO: Well, it's regarding obviously the

19   decision we just discussed on this hearing today, Your

20   Honor.

21             THE COURT: Yes, because I thought you were

22   focusing more on the treatment than any jurisdictional

23   issues, so that's properly an issue for the government and

24   public defender to take care of.

25             MR. CARRILLO: I can barely hear you, Your Honor,

1    sorry.

2              THE COURT: No, no, it's that you know, this

3    jurisdictional issue that was raised by the public defender.

4    It's a matter of law, okay and I don't think you would

5    probably even have to be concerned with anything like that.

6    Okay.

7              MR. CARRILLO: Understood.

8              THE COURT: Your primary concern should be the

9    treatment of defendant and whether he poses some risk, you

10   know, to the community and to himself.  Okay.

11             MR. CARRILLO: Understood.  You need that my

12   Wednesday?

13             THE COURT: You wouldn't have any objection, you

14   know, if this is justified by Friday, that he continue his

15   in-patient treatment.  Okay.

16             MR. CARRILLO: Understood.  You need that by

17   Wednesday, then, Your Honor, right?

18             THE COURT: Okay, yes.

19             MR. CARRILLO: Okay, perfect.  Thank you very much,

20   Your Honor.

21             THE COURT: Very well.  Thank you for appearing in

22   such short notice.  Okay.

23             MR. CARRILLO: Thank you.

24             MR. LERMAN: Thank you, Your Honor.  Have a nice

25   evening.

1          MR. VALENTIN: Thank you, Your Honor.

2          THE COURT: Thank you all.

3              (The hearing ended at 4:41 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    U.S. DISTRICT COURT)

2    DISTRICT OF PUERTO RICO)

3

4        I certify that this transcript consisting of 34 pages

5    is a true and accurate transcription to the best of my

6    ability of the proceedings in this case before the Honorable

7    District Judge Jay A. Garcia-Gregory on August 16, 2024.

8

9

10

11

12   S/Boabdil Vazquetelles

13   Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25